# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| JAMES DAMON S., | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) Case No. 19-CV-75-JFJ |
| ANDREW M. SAUL, Commissioner, Social Security Administration, | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff James Damon S. seeks judicial review of the decision of the Commissioner of the Social Security Administration denying his claim for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423. In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court reverses the Commissioner's decision denying benefits and remands for further proceedings. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

## I. Standard of Review

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotations omitted). The Court must "meticulously

examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1261 (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, the Commissioner's decision stands so long as it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II. Procedural History and the ALJ's Decision

Plaintiff, then a 39-year-old male, applied for Title II benefits on November 20, 2015, alleging an amended disability onset date of June 30, 2015. R. 162-168, 187. Plaintiff claimed that he was unable to work due to disorders including panic disorder and depression. R. 191. Plaintiff's claim for benefits was denied initially on March 17, 2016, and on reconsideration on June 7, 2016. R. 85-89; 91-93. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ conducted the hearing on November 20, 2017. R. 31-56. The ALJ issued a decision on January 18, 2018, denying benefits and finding Plaintiff not disabled because he was able to perform other work existing in significant numbers in the national economy. R. 9-25. The Appeals Council denied review, and Plaintiff appealed. R. 1-5; ECF No. 2.

The ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2019, and that he had not engaged in substantial gainful activity since his amended alleged onset date of June 30, 2015. R. 14. The ALJ found that Plaintiff had the following severe impairments: depressive disorder and panic disorder with agoraphobia. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments of such severity to result in listing-level impairments. R. 15-17. Prior to making a step-four finding and after "careful consideration of the entire record," the ALJ found that Plaintiff retained the residual functional

2

capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> The claimant is able to perform simple, routine and repetitive tasks, but not at a fast-paced production rate. The claimant is able to perform low stress jobs. The job should not involve over-the-shoulder type supervision. The job should provide regular breaks of at least fifteen minutes every two hours. The claimant is able to interact with supervisors as needed to receive work instructions. The claimant is able to work in proximity to coworkers, but should have no more than superficial work-related interaction with coworkers. The claimant should never interact with the general public. The job should not involve more than ordinary and routine changes in work setting or work duties. The job should not involve travel to unfamiliar places or use of public transportation. The claimant is able to make simple work-related decisions. The claimant is able to set simple work goals or make simple work plans independently of others.

R. 17.

The ALJ found that Plaintiff was unable to perform any past relevant work. R. 23-24. Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work, such as industrial sweeper cleaner, mail clerk, and warehouse worker. R. 24-25. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). R. 25. Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy. *Id.* Accordingly, the ALJ concluded Plaintiff was not disabled.

### III. Issues and Analysis

Plaintiff raises one issue on appeal: the ALJ committed reversible legal error by failing to properly consider the opinions of treating psychiatrist, Dominic Losacco, M.D., and agency consultative examiner ("CE"), Timothy Doty, Psy.D. ECF No. 19. Plaintiff argues that the ALJ erred by failing to give specific, legitimate reasons for her rejection of the opinions of Dr. Losacco and Dr. Doty regarding Plaintiff's mental functioning limitations. For reasons explained below, the Court agrees and finds reversal warranted.

### A. Legal Standards

#### 1. Treating Source Opinion

Generally, the ALJ should give more weight to medical opinions from a claimant's "treating sources," which means an acceptable medical source who has had an ongoing treatment relationship with the claimant. 20 C.F.R. § 404.1527(a)(2) & (c)(2). The ALJ must give an opinion from a treating source "controlling weight," if it is both "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

If a treating source's medical opinion is not given controlling weight, the opinion is still entitled to deference, and the ALJ must provide "good reasons" for the weight given. 20 C.F.R. § 404.1527(c)(2). The ALJ must consider the following six factors: (1) the examining relationship; (2) the length, nature, and extent of the treatment relationship; (3) supportability of the opinion with relevant evidence; (4) consistency of the opinion with the record as a whole; (5) specialization of the medical source; and (6) any other factors that may support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6). If an ALJ rejects the treating source's opinion, he must give "specific, legitimate reasons" for doing so, based on an evaluation of all the regulatory factors. *Watkins*, 350 F.3d at 1301. Although the ALJ's decision "need not include an *explicit* discussion of each factor," the record must reflect that the ALJ considered every relevant factor in the weight calculation. *Andersen v. Astrue*, 319 F. App'x 712, 718 (10th Cir. 2009). The question for the reviewing court is whether the ALJ's decision contains specific reasons that make clear the weight assigned to the medical source opinion and the reasons for that weight. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) (stating that the proper inquiry is whether the reviewing court "can

follow the adjudicator's reasoning" and "can determine that correct legal standards have been applied").

## 2. Examining Source Opinion

The agency generally gives "more weight to the medical opinion of a source who has examined" the claimant than a medical source who has only reviewed medical records. 20 C.F.R. § 404.1527(c)(1). As with all medical opinion evidence, an ALJ considers the above-listed factors in evaluating an examining source's medical opinion. 20 C.F.R. § 404.1527(c)(1). As with treating sources, if the ALJ rejects an opinion from an examining source, he must give "specific, legitimate" reasons for rejecting it. *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012).

**B.     ALJ Failed to Follow Correct Legal Standards in Considering Medical Opinions, and Limited Reasons Given are not Supported by Substantial Evidence**

## 1. Dr. Losacco – Treating Physician Opinion

Dr. Losacco was Plaintiff's treating psychiatrist from 2015 to 2017. On August 4, 2016, Dr. Losacco completed a Mental Residual Functional Capacity Assessment regarding Plaintiff's ability to do work-related activities. R. 362-364. Dr. Losacco opined that Plaintiff was *severely* limited in the following fourteen areas: his ability to understand and remember detailed instructions; his ability to carry out detailed instructions; his ability to maintain attention and concentration for extended periods of time; his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; his ability to work in coordination with or proximity to others without distraction; his ability to make simple work-related decisions; his ability to interact appropriately with the general public; his ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; his ability to maintain socially appropriate behavior, while adhering to basic standards of neatness and cleanliness; his ability to respond appropriately to changes in the work setting; his ability to be

5

aware of normal hazards and take appropriate precautions; his ability to travel to unfamiliar places or use public transportation; his ability to set realistic goals or make plans independently of others; and his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 362-363. Dr. Losacco opined that Plaintiff was *markedly* impaired in his ability to remember locations and work-like procedures, sustain an ordinary routine without special supervision, and accept instructions and respond appropriately to criticism from supervisors. Dr. Losacco further opined that Plaintiff was *moderately* impaired in his ability to ask simple questions or request assistance, carry out very short and simple instructions, and understand and remember very short and simple instructions. *Id.* Dr. Losacco stated that his opinions were based on Plaintiff's diagnoses of severe panic disorder with agoraphobia and major depression. Dr. Losacco stated that Plaintiff's "conditions are treatment resistant" and that Plaintiff's "prognosis [was] poor." R. 363.[1]

The ALJ gave Dr. Losacco's opinion "little weight" and found that the "severe and extreme limitations" found by Dr. Losacco were not consistent with his own records or other medical evidence:

> At Exhibit 7F, Dr. Losacco completed a mental residual functional capacity assessment on August 4, 2016. Dr. Losacco opined that the claimant was moderately limited in the ability to understand and remember very short and simple instructions, the ability to carry out very short and simple instructions, and the ability to ask simple questions or request assistance. Dr. Losacco opined that the claimant had marked limitation in the ability to remember locations and work-like procedures, the ability to sustain an ordinary routine without special supervision,

---

[1] Dr. Losacco also completed a Mental Status Form dated March 23, 2016, in which he noted that Plaintiff's appearance was disheveled and unkempt and that Plaintiff's mental status showed depressed mood, limited affect, diminished speech, and cognitive impairment. Dr. Losacco opined that, although Plaintiff was well oriented, he had minimal stress tolerance, was easily overwhelmed, and limited his daily pursuits. Dr. Losacco noted depression, anxiety, and possible Asperger's Syndrome as Plaintiff's conditions. He opined that Plaintiff could remember and understand simple instructions but could not respond to work pressure, supervision, or coworkers. He listed Plaintiff's official diagnoses as major depression and panic disorder. R. 345.

6

and the ability to accept instructions and respond appropriately to criticism from supervisors. Dr. Losacco opined that the claimant had severe limitation in all other areas. *The severe and extreme limitations are not consistent with the office treatment records from Dr. Losacco at Exhibits 8F and 10F,[2] or the totality of the medical evidence of record. Dr. Losacco's records show that the severity of the claimant's impairments vary from visit to visit, but they do not show findings that would be consistent with marked or severe limitations.* While the record clearly establishes that the claimant has severe mental medically determinable impairments that do cause functional limitations, the medical of record [sic] does not show that the claimant is incapable of performing work-related functions as opined by Dr. Losacco. Accordingly, this opinion is given little weight.

R. 22 (emphasis and footnote added).

The ALJ failed to follow correct legal standards by failing to adequately explain or identify what treatment records from Dr. Losacco are inconsistent with Dr. Losacco's findings of severe limitations. The ALJ discussed some relevant treatment records in the decision. R. 20. However, in discussing opinion weight, the ALJ failed to link any of Dr. Losacco's medical records to her discussion and rejection of his opinion. R. 22. The Court has attempted to connect the ALJ's opinion weight discussion with her prior discussion of Dr. Locasso's medical examinations but finds nothing that in the referenced records that clearly contradicts Dr. Losacco's opinions or otherwise clarifies her reasoning. The ALJ's reasons for rejecting the opinion are not "sufficiently specific" to enable the Court to meaningfully review the findings. *See Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (reversing where ALJ "failed to explain or identify what the claimed inconsistencies were" between treating physician's opinion and other substantial evidence in the record); *Kellams v. Berryhill*, 696 F. App'x 909, 918 (10th Cir. 2017) (reversing where ALJ did not explain how treating physician's findings were inconsistent with treatment history).

Further, the limited reasons that were provided by the ALJ – namely, inconsistency with Dr. Losacco's own treatment records and variations in the severity of Plaintiff's impairments from

---

[2] Exhibit 10F is the complete medical treatment history by Dr. Losacco, so this citation does not point the Court to any specific record.

7

visit to visit – do not appear to be supported by the record. As an initial matter, the ALJ omitted from her discussion five months of treatment records that showed consistent support for Dr. Losacco's opinions. R. 20, 22. The record, considered as a whole, indicates that Plaintiff received regular psychiatric care from Dr. Losacco from June 30, 2015, through May 22, 2017, and treatment was ongoing. R. 345-357, 365-383, 501-522.[3] Plaintiff presented to Dr. Losacco June 30, 2015, with complaints of depression, anxiety, panic attacks, and suicidal ideation. R. 501. Treatment notes show Plaintiff's complaints of persistent anxiety and panic attacks throughout his treatment history. Although Plaintiff's depression periodically improved, this was not on any sustained basis, and Plaintiff's suicidal ideations fluctuated. Dr. Losacco counseled and medicated Plaintiff for his mental impairments consistently during this time period. He adjusted Plaintiff's medications numerous times, trying at least sixteen different antidepressant or antipsychotic medications in conjunction with Xanax, which all had adverse side effects. R. 504-505 (8/17/15 – adverse reactions to Klonopin and Wellbutrin), R. 505 (9/8/15 – felt anxious despite Lexapro), R. 506 (9/17/15 – Paxil caused significant rebound of symptoms, anxiety and panic attacks), R. 507 (10/19/15 – Seroquel caused increased depression and prominent anxiety despite Xanax), R. 508-509 (11/25/15 – unable to tolerate Abilify), R. 510 (1/25/16 – depression worsened with Cymbalta), R. 511-512 (3/23/16 – Abilify causes jittery feelings, Cymbalta causes emotionally bland, adverse reactions to Zoloft, Paxil, Lexapro, and Wellbutrin), R. 513 (4/25/16 – Ritalin causes jittery feelings), R. 514-515 (6/27/16 – increased anxiety and suicidal thoughts with Nuvigil, adverse reaction to Lamictal), R. 515 (8/4/16 – Brintellix caused headaches), R. 516-517 (9/6/16 – adverse reactions to Wellbutrin and Paxil), R. 517-518 (10/13/16 – Viibryd stopped due

---

[3] Dr. Losacco's treatment records are repeated in part at Exhibits 5F (June 30, 2015 to March 23, 2016) and 8F (June 30, 2015 to November 15, 2016), and the entire treatment records are found at Exhibit 10F (June 30, 2015 to May 22, 2017). The Court will reference Exhibit 10F for simplicity. The one exception is a Mental Status Form, dated March 23, 2016, included only with Exhibit 5F. R. 345.

to diarrhea, increased anxiety), R. 518 (11/15/16 – Vraylar caused nausea and dizziness, Prozac caused headaches), R. 519 (12/22/16 – adverse reaction to Pristiq, persistent panic), R. 520 (2/22/17 – "anxiety erupts" with lowered dose of Xanax), R. 521-522 (5/22/17 – adverse reaction to Adderall). Treatment records indicate that Xanax is the only medication that consistently helped in treating Plaintiff's anxiety. But as consistently noted by Dr. Losacco, it causes hypersomnia, and Plaintiff sleeps more than half the day. R. 501-522.

Upon review of the supporting record, it is unclear how Dr. Losacco's opinions are inconsistent with his own records, or how variations between visits rendered Dr. Losacco's findings of severe work-limited limitations in fourteen different areas to be entitled to less weight. Further, other treatment records of Plaintiff's general physician and Dr. Doty's CE generally align with Dr. Losacco's opinion. *See* R. 554-642, 338-344. The Court finds the reasons given for rejection of Dr. Losacco's mental health opinions are not "specific" or "legitimate," and that reversal is required for further clarification. *See Langley*, 373 F.3d at 1122 (finding reversal warranted where court did not find "obvious inconsistencies" between treating physician's opinion, his own treatment notes, or other evidence in the record relating to Plaintiff's mental health limitations).

### 2. Dr. Doty – CE Opinion

On January 19, 2016, Dr. Doty conducted a consultative mental status examination and provided his opinions of Plaintiff's ability to perform specific work-related activities. R. 338-344.[4] In conducting this assessment, Dr. Doty interviewed Plaintiff regarding his mental symptoms and performed standardized mental health tests. Plaintiff complained of "intolerable"

---

[4] Exhibit 4F contains two identical copies of Dr. Doty's consultative examination report. The only unduplicated page is page nine of the exhibit, R. 344, which is Dr. Doty's Capability Opinion formally noting Dr. Doty's opinion that Plaintiff would be able to manage any benefit payments in his own interest and confirming the January 19, 2016, date of the examination. R. 338-344.

9

panic attacks with social anxiety. R. 338. He reported using a high dose of Xanax daily and sleeping 12 to 16 hours each day. Plaintiff reported a history of mental health problems dating back to 1997 without a history of hospitalizations. Plaintiff reported suicidal thoughts but "clarified that he would never follow through with suicide." R. 339. Plaintiff denied any history of drug or alcohol use. Dr. Doty noted Plaintiff's mini mental status examination results and opined that, according to the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition ("DSM-5"), his diagnostic impressions of Plaintiff were: 300.01 Panic Disorder with occupational problems, with a DSM-4 Global Assessment of Functioning ("GAF") score of 51-60.[5]

> Fund of knowledge is judged to be above average; Associations were relevant; Memory and concentration impacted by anxiety; Insight and reality testing moderate-to-low; Affective range restrained; Mood observed to be withdrawn; he described his mood most days to be sad.

R. 339. Dr. Doty summarized his findings as follows:

> [Plaintiff] described that he is unable to work because of severe panic associated with stressful situations. His *ability* to engage in work-related mental activities appear[ed] intact, albeit reduced by either anxiety and/or medication (as evidenced by poor performance on tasks on the MSE). His ability to *understand* work-related mental tasks appears intact. His *memory* performance was poor as briefly assessed on a MMSE. His ability to *sustain concentration* in a real-world situation appears poor. His ability to *persist* in work-related tasks appears poor. His ability to *socially interact* and *adapt* to the demands of a work situation appears moderate/low. [Plaintiff's] mental status, at the time of this CE, suggests that [he] is cognitively capable of managing disability benefits if he were to receive such. The veracity and reliability of the information gathered for the purpose of the CE does not seem to include intentional or misleading over/underreporting. Behavioral therapy for anxiety disorder and panic attacks is highly recommended. The more [Plaintiff] avoids uncomfortable situations, the worse his anxiety and panic are likely to become.

R. 339-340 (emphasis in original).

---

[5] The DSM-5 no longer endorses the use of GAF scores for several reasons. *See Krchmar v. Colvin*, 548 F. App'x 531, 534 n.2 (10th Cir. 2013); *Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014).

The ALJ discussed Dr. Doty's psychological CE opinion in conjunction with discussion of Dr. Doty's examination. The ALJ appears to discount some of Dr. Doty's opinions as too severe and not supported by the medical evidence:[6]

> On February 1, 2016,[7] the claimant presented to Timothy Doty, Ph.D., for a psychological consultative examination. The claimant was appropriately dressed for the weather. His demeanor was described as cooperative and reserved. The claimant spent his time most days on a high dose of Xanax and he slept "quite a bit." The claimant reported sleeping twelve to sixteen hours per day. The claimant stated that he was married and he considered his wife a support. His mother was also a support to him. On a mini mental status examination, the claimant earned twenty-three of thirty possible points. The claimant was fully oriented. He lost points for not being able to complete the serial seven's task, he only answered one calculation correctly. He was also unable to spell the word "world" backwards. In response to what he could tell was a poor performance on those tasks, the claimant said "I'm blanking out and I think the Xanax does that to me sometimes." The claimant was not able to repeat any of the delayed recall/implicit memory items. The claimant's fund of knowledge was average. The claimant's associations were relevant. His memory and concentration were affected by anxiety. His insight and reality testing were described as moderate-to-low. The claimant's affective range was restrained and his mood was observed to be withdrawn. He described his mood most days to be sad. The claimant denied hallucinations, delusions, depersonalization and derealization. The claimant was assessed with panic disorder, and assigned a global assessment of functioning score in the moderate range, between fifty-one and sixty. Dr. Doty opined that the claimant's ability to engage in work-related mental activities appeared intact, but reduced by wither anxiety and/or medication. The claimant's ability to understand work-related mental tasks appeared intact. His memory performance was poor, as briefly assessed on a mini mental status examination. His ability to sustain concentration in a real-world situation appeared poor. His ability to persist in work-related tasks appeared poor. His ability to socially interact and adapt to the demands of a work situation appeared moderate or low. The claimant's mental status at the time of the examination suggested that he was cognitively able to manage benefits if they were awarded. Behavioral therapy for anxiety disorder and panic attacks was highly recommended (Exhibit 4F). *The opinions of Dr. Doty, including a global assessment of functioning score between fifty-one and sixty, have been considered and are given some weight, but they are not as reliable as medical evidence of record and are based on a one-time examination.* It is noted that the claimant's ability to engage in work-related mental activities appears intact, but reduced by anxiety and/or medication. The claimant's understanding was intact. His memory,

---

[6] The Court has italicized portions of the decision mentioning the weight given to Dr. Doty's opinion but, as discussed below, finds the weight assignment to be unclear.

[7] Dr. Doty submitted his report on February 1, 2016, but Plaintiff's examination date was January 19, 2016. R. 338.

> ability to sustain concentration and persist were described as poor. The claimant's ability to interact was low. *These limitations have been considered and are given weight, as they are consistent with medical evidence of record and the examination completed by Dr. Doty.* While Dr. Doty indicated that the claimant would be cognitively capable of managing funds, this is not given significant weight, as it appears inconsistent with examination and testing, as well as the claimant's reported inability to interact in public.

R. 22-23 (emphasis added).

With respect to Dr. Doty, the ALJ's weight assignment is somewhat unclear. Dr. Doty made findings of poor memory performance; poor ability to sustain concentration in a real world situation; poor ability to persist in work-related tasks; and moderate/low abilities to socially interact and adapt to demands of a work situation. R. 339. The ALJ stated these limits were considered and "given weight," because they were consistent with the medical evidence. But the RFC reflected an allowance only for the usual breaks provided in normal work situations, which does not appear to be consistent with Dr. Doty's assessment that Plaintiff could not persist in work-related tasks. The ALJ gave weight to these limits but then seemingly excluded them from the RFC without adequate explanation, which constitutes error in this case. *See Parker v. Comm'r*, 772 F. App'x 613, 616 (10th Cir. 2019) (explaining that agency must ordinarily explain how a "work-related limitation accounts for mental limitations reflected in a medical opinion" and reversing where agency's findings restricting the complexity or pace of work did not adequately incorporate a medical opinion involving a moderate limitation in the ability to respond appropriately to usual work situations and changes in a work setting).

To the extent the ALJ intended to discount aspects of Dr. Doty's opinion by finding it "not as reliable as medical evidence of record and [] based on a one-time examination," R. 23, the Court again finds no clear or obvious indication of conflicting "medical evidence of record." As with Dr. Losacco, the ALJ failed to adequately explain or cite the conflicting records in order to permit

meaningful review by the Court. Therefore, the reasons given for rejecting Dr. Doty's opinion are not specific or legitimate.

### 3. Harmful Error

The Court further concludes the ALJ's error is not harmless. Harmless error doctrine applies only in the "exceptional circumstance" where the court could confidently say that no reasonable administrative factfinder could have resolved the factual matter in any other way. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). To the extent any harmless-error determination "rests on legal or evidentiary matters not considered by the ALJ, it risks violating the general rule against post hoc justification of administrative action." *Id.* Here, Dr. Losacco's and Dr. Doty's opinions regarding Plaintiff's mental limitations reflect functional limitations beyond those considered in the RFC, and it is unclear to the Court what medical evidence contradicts the opinions. Accordingly, the Court cannot conclude a reasonable factfinder would reach a different conclusion if these physicians' opinions were given a greater weight.

## V. Conclusion

The ALJ's decision finding Plaintiff not disabled is **REVERSED and REMANDED** for proceedings consistent with this Opinion and Order. On remand, the ALJ should properly consider the relevant opinions from Plaintiff's treating physician, Dr. Losacco, and consultative examiner, Dr. Doty, and any other opinion evidence as necessary, and provide legitimate reasons for the weight given to each opinion.

**SO ORDERED** this 25th day of March, 2020.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**